UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAMARA A.,[1]

       Plaintiff,

v.                                       **6:23-CV-6171-LJV**
                                           **DECISION & ORDER**
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

On March 23, 2023, the plaintiff, Shamara A. ("Shamara"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2]  *Id.*  On June 15, 2023, Shamara moved for judgment on the pleadings, Docket Item 6; on September 13, 2023, the Commissioner responded and cross-moved

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Shamara applied for Disability Insurance Benefits ("DIB").  One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  A qualified individual may receive both DIB and Supplemental Security Income ("SSI"), and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

for judgment on the pleadings, Docket Item 11; and on September 27, 2023, Shamara replied, Docket Item 12.

For the reasons that follow, this Court denies Shamara's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443,

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.  THE ALJ'S DECISION

On May 4, 2022, the ALJ found that Shamara had not been under a disability since December 18, 2020, the date Shamara alleged that her disability began. *See* Docket Item 5 at 25-37. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. § 404.1520(a). *See id.*

At step one, the ALJ found that Shamara met the insured status requirements of the Act through December 31, 2025, and had not engaged in substantial gainful activity since her alleged disability onset date. *Id.* at 27. At step two, the ALJ found that Shamara suffered from two severe, medically determinable physical impairments: asthma and migraine headaches. *Id.* at 28. The ALJ found that Shamara's "mental impairments of depressive disorder and anxiety disorder . . . do not cause more than minimal limitation in [Shamara's] ability to perform basic mental work activities and are therefore nonsevere." *Id.* In assessing Shamara's mental impairments, the ALJ found that Shamara was (1) not limited in understanding, remembering, or applying

3

information; (2) not limited in interacting with others; (3) mildly limited in concentrating, persisting, or maintaining pace; and (4) mildly limited in adapting or managing herself. *Id.* at 28-29.

At step three, the ALJ found that Shamara's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 29-30. More specifically, the ALJ found that Shamara's impairments did not meet or medically equal listing 3.02 (chronic respiratory disorders)*,* 3.03 (asthma), and 11.02 (epilepsy), *id.* at 29.

The ALJ then found that Shamara had the RFC[4] to perform "light work" as defined in 20 C.F.R. § 404.1567(b) except that Shamara:

> can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. [She] can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid even moderate exposure to unprotected heights and moving and dangerous machinery, but is able to operate a motor vehicle. [She] would have to avoid concentrated exposure to pulmonary irritants and noise, such as very loud banging.

*Id.* at 30.

At step four, the ALJ found that Shamara no longer could perform any past relevant work. *Id.* at 35. But given Shamara's age, education, and RFC, the ALJ found at step five that Shamara could perform substantial gainful activity as a case aid. *Id.* at 36; *see Dictionary of Occupational Titles* 195.367-010, 1991 WL 671595 (Jan. 1, 2016).

---

[4] A claimant's residual functional capacity ("RFC") is the most she "can still do despite her limitations . . . in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

Therefore, the ALJ found that Shamara had not been under a disability or entitled to DIB since December 18, 2020.  *See* Docket Item 5 at 37.

## II.     ALLEGATIONS

Shamara argues that the ALJ erred in two ways.  Docket Item 6-1.  First, she argues that the ALJ's step-two determination that her depressive disorder and anxiety disorder were not severe was not supported by substantial evidence.  *Id.* at 8.  Second, she argues that the ALJ failed to take her non-severe mental impairments into account when making his RFC determination.  *Id.* at 13.  For the reasons that follow, this Court disagrees.

## III.    ANALYSIS

### A. The Step-Two Determination

Shamara first argues that the ALJ's determination at step two that her depressive disorder and anxiety disorder were not severe impairments was not supported by substantial evidence.  Docket Item 6-1 at 8.

Disability under the Act is determined under a five-step test; at the second step, the ALJ decides whether the claimant has any "severe" impairment—that is, a medically determinable impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  "Basic work activities" are "activities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1522(b).  With respect to mental activities, the ALJ assesses the claimant's degree of limitation in four areas: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting and managing oneself. 20 C.F.R. § 404.1520a(a),(c); *see Thomas v. Berryhill*,

5

337 F. Supp. 3d 235, 239 (W.D.N.Y. 2018) (discussing an ALJ's application of the "special technique" for non-exertional limitations).

At step two of Shamara's disability determination, the ALJ found her depressive disorder and anxiety disorder to be non-severe. Docket Item 5 at 28. Shamara argues that the ALJ erred in this regard because "the evidence showed [Shamara's] mental impairments significantly limited her ability to do basic work activities. Docket Item 6-1 at 8.[5] This Court disagrees.

"It is not enough for [Shamara] to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could not support her position." *See Dailey v. Comm'r of Soc. Sec.,* 2016 WL 922261, at *6 (N.D.N.Y. Feb. 18, 2016). Under the substantial evidence standard of review, Shamara must show that the ALJ's findings of fact were so inconsistent with the medical record that "a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F. 3d 443, 448 (2d Cir. 2012); *McIntyre v. Colvin*, 758 F. 3d 146, 149 (2d Cir. 2014). And she has not met that burden.

---

[5] Shamara states that the following conclusively establishes the severity of her mental conditions:

> Primary care records noted Plaintiff continued to struggle with the loss of her son. She was initially on amitriptyline and fluoxetine. Fluoxetine was stopped as it made her groggy, and she was started on mirtazapine. She was also on clonazepam. Anxiety attacks were noted in August 2019, with chest tightening lasting 45 minutes. Moreover, at primary care follow ups, depression screenings were positive. In addition, she remained on Amitriptyline, and fluoxetine. At her hearing, she testified that her medications were largely ineffective. She had nervousness and shaking.

Docket Item 6-1 at 10 (internal citations omitted).

In his decision, the ALJ applied the required "special technique" and supported his conclusions in each of the four areas with far more than a scintilla of record evidence. See Docket Item 5 at 28-29. For instance, the ALJ concluded that Shamara had only a mild impairment in concentrating, persisting, or maintaining pace based on evidence in the record of "normal and/or intact" attention, concentration, cognitive functioning, and thought process. Id. at 29-30 (citing id. at 534). Likewise, the ALJ identified only a mild impairment in Shamara's ability to adapt or manage herself based on Shamara's money management and self-care, as well as reports that Shamara's "insight and judgment were normal and/or intact" and her consistent denial of "any suicidal or homicidal ideation." Id. (citing id. at 521, 532, 534, 703, 707, 711, 731).[6]

What is more, and as Shamara concedes, see Docket Item 6-1 at 8, a consultative psychiatric examiner opined in March 2021 that Shamara had no mental health limitation or impairment, see id. at 534-35. So the ALJ's finding was supported by opinion evidence as well, and Shamara does not cite any opinion evidence to the contrary. See generally Docket Item 6-1.

In sum, Shamara's argument boils down to disagreeing with the opinion of the psychiatric consultant and the ALJ's weighing of the evidence. But that clearly is not enough. Therefore, and because the ALJ's step-two determination is supported by

---

[6] The ALJ determined that Shamara was not impaired in her ability to understand, remember, or apply information based on reports that "[s]he was consistently alert and fully oriented," as well as evidence in the record that Shamara's "memory, cognitive functioning, attention, and concentration were normal and/or intact." Id. at 28 (citing id. at 533, 703, 707, 711). Similarly, the ALJ found that Shamara was not limited in her ability to interact with others based on reports that "she stayed in touch with several friends and close family" and that she had "no problems getting along with others." Id. (citing id. at 300, 534), So those findings were likewise well supported and explained.

7

substantial evidence, Shamara's first argument misses the mark.  But even if the ALJ had erred at step two, that error would have been harmless for the reasons that follow.

### B. The RFC Determination

The ALJ found that Shamara could perform light work[7] with no mental health limitations whatsoever.  Docket Item 5 at 30.  Shamara argues that in reaching this conclusion, the ALJ failed to address her non-severe mental health impairments.  Docket Item 6-1 at 12.  Again, this Court disagrees.

An error at step two may be harmless when the ALJ "identifies other severe impairments such that the analysis proceeds and the ALJ considers the effects of the omitted impairments during subsequent steps."  *Calixte v. Colvin*, 2016 WL 1306533, at *23 (E.D.N.Y. Mar. 31, 2016); *see Jatava L. v. Comm'r of Soc. Sec.*, 2021 WL 4452265, at *4 (W.D.N.Y. Sept. 28, 2021) ("An error at step two may be harmless if the ALJ identifies other severe impairments at step two, proceeds through the remainder of the sequential evaluation process, and specifically considers the 'non-severe impairment' during the subsequent steps of the process").  In other words, even if an ALJ incorrectly finds a severe impairment to be nonsevere, that error is harmless if the ALJ weighs the nonsevere impairment as part of the RFC determination.  *See Pacholski v. Berryhill*, 2018 WL 3853388, at *3 (W.D.N.Y. Aug. 14, 2018) ("An error at step two—either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe—can be harmless if the ALJ continues

---

[7] "Light work" is work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 1567(b).

the analysis and considers all impairments in his RFC determination."). But in formulating a claimant's RFC, the ALJ "must account for limitations imposed by both severe and non[-]severe impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012); *see Felix S. v. Comm'r of Soc. Sec.*, 630 F. Supp. 3d 423, 428 (W.D.N.Y. 2022) ("Simply because the ALJ concluded that Plaintiff's mental limitations were non-severe impairments does not relieve him of the duty to consider them in connection with assessing the RFC.").

An ALJ also must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019). As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. § 404.1545; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Here, in formulating Shamara's RFC, the ALJ explicitly addressed both her severe physical impairments and her nonsevere mental impairments. *See* Docket Item 5 at 30-35. Moreover, the ALJ supported his conclusions with both the medical evidence in the record and the opinions of providers who either examined Shamara or

reviewed her medical records.  *Id.*  In other words, the ALJ did exactly what he was supposed to do.

For example, and specifically with respect to the mental health determination that Shamara now challenges, the ALJ explicitly addressed the opinions of a consultative examiner, Christine Ransom, Ph.D., as well as two state agency consultants, D. Brown, Psy.D., and L. Dekeon, Ph.D.  *See* Docket Item 5 at 34-35.  Dr. Ransom examined Shamara on March 1, 2021, and opined, among other things, that Shamara had no mental limitations.  *See* Docket Item 5 at 532-35.  Dr. Dekeon and Dr. Brown both reviewed Shamara's medical records and likewise concluded that any mental impairments were non-severe.  *See id.* at 95, 114.  And those three opinions provided more than enough support for the ALJ's decision.

In her report and opinion, Dr. Ransom noted that Shamara "denied any ongoing clinical level of depression, generalized anxiety, panic attacks, manic symptomatology, thought disorder, cognitive symptomatology/deficits, suicidal and homicidal ideation, or phobic and trauma responses."  *Id.* at 532.  Dr. Ransom opined that Shamara had no mental health limitation or impairment and that any "psychiatric conditions" were "stabilized on medication."  *Id*. at 534-35.  The ALJ found Dr. Ransom's opinion to be "persuasive" because it was consistent with her specialty as a psychologist and the medical evidence of record and because it was supported by a narrative explanation.  *See* Docket Item 5 at 34.

The opinions of the two consultants who examined Shamara's medical records were consistent with what Dr. Ransom found.  After examining Shamara's chart, Dr. Brown concluded that any "psychiatric impairments do not impact functioning" and

therefore "are non-severe." *See id*. at 96-97 (capitalization omitted).  Dr. Dekeon agreed, finding that updated records "show[ed] no significant problems" and that any psychiatric conditions "are nonsevere." *See id*. at 114-16.  The ALJ found the opinions of Dr. Dekeon and Dr. Brown to be persuasive because "they are both psychologists, and their opinions are consistent with the medical evidence of record." *Id.* at 35.  Indeed, the ALJ noted that because Drs. Brown and Dekeon had been "approved by the Commissioner," they are "'highly qualified' psychologists who are also 'expert[s] in Social Security disability evaluation.'" *Id.*

So contrary to Shamara's argument, the ALJ explicitly addressed her nonsevere mental health issues in formulating her RFC.  And the opinions of Drs. Ransom, Brown, and Dekeon provided more than enough support for the ALJ's conclusion.[8]

In sum, the ALJ's RFC determination was consistent with the evidence in the record and supported by the medical evidence, the opinion evidence, and the nonmedical evidence such as Shamara's reports of her daily activities.  Because the

---

[8] Shamara argues that the ALJ committed an error identical to the one requiring remand in *David Q. v. Commissioner of Social Security*, 2022 WL 806628, at *4 (W.D.N.Y. Mar. 17, 2022).  *See* Docket Item 6-1 at 13.  In *David Q.*, remand was necessary because the ALJ entirely failed to "address or account for any functional limitations associated "with plaintiff's major depressive disorder in the RFC assessment." 2022 WL 806628, at *5.  Moreover, the ALJ's error was not harmless because "the only examining source to opine on plaintiff's mental functioning capacity assessed plaintiff with various mild and moderate mental functional limitations." *David Q.,* 2022 WL 806628 at 6.  Those mental functional limitations appeared nowhere in the ALJ's decision "despite the fact that the ALJ found [the examining source's] opinion to be persuasive and assigned it significant probative value." *Id.* at *6 (internal quotation marks and citation omitted).  *Id.*  Here, Shamara cites no comparable opinion that the ALJ ignored.  And here, the ALJ explicitly addressed the opinion evidence in the record and formulated  an RFC consistent with it.  So contrary to Shamara's assertion, David Q. is inapposite.

ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence. This Court cannot and will not second guess it.

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Shamara's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 11, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:       December 28, 2023
             Buffalo, New York

                                                  *Lawrence J. Vilardo*
                                                  LAWRENCE J. VILARDO
                                                  UNITED STATES DISTRICT JUDGE